UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| RUSSELL HOEKSTRA, | ) | JURY DEMANDED |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:17-CV-02040 |
| | ) | |
| CITY OF MOMENCE, | ) | U.S. District Judge |
| and JEFFREY CAVENDER, in his official | ) | Colin S. Bruce |
| and individual capacities, | ) | |
| | ) | U.S. Magistrate Judge |
| Defendant. | ) | Eric I. Long) |

## SECOND[1] AMENDED COMPLAINT

NOW COMES Plaintiff, RUSSELL HOEKSTRA, by and through his attorneys Nicholas F. Esposito and Bradley K. Staubus, and for his Second Amended Complaint against Defendants, MOMENCE POLICE DEPARTMENT including the City of Momence Police Department, and the City of Momence Police Chief JEFFREY CAVENDER in his official and individual capacities (individually and/or collectively as "Defendants"), alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      This action is brought pursuant to the Age Discrimination in Employment Act ("ADEA") of 1967 as amended (29 U.S.C. § 621, *et seq.*) arising from acts of age discrimination and retaliation and under 42 U.S. Code § 1983 and § 1988, as amended, for committing acts, under color of state law, with the intent and for the purpose of depriving Plaintiff of rights secured under the Constitution and laws of the United. This civil action seeks damages against all Defendants.  Thus, this action arises under federal law and the United States Constitution including 42 U.S.C. Sections 1983 and 1988, as amended.

---

[1] Plaintiff's Amended Complaint was granted as an Agreed Order by the Northern District's Judge Virginia Kendall to Correct Misnomer of Defendnat City of Momence.

2. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States, and §1343(4) because this action arises from an Act of Congress for the protection of civil rights. The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and the United States Constitution, which rights provide for damages and other relief for illegal discrimination in employment.

3. Venue in this district is proper under 42 U.S.C. § 2000e-5(f) (3) and 28 U.S.C. § 1391(b-c) because the unlawful employment practices occurred in this district and the Defendant does business in this judicial district.

4. Plaintiff, RUSSELL HOEKSTRA ("Plaintiff"), is an Iroquois County, Illinois Resident. At all relevant times, Plaintiff was a full-time Patrolman at Defendant, MOMENCE POLICE DEPARTMENT.

5. Defendant, CITY OF MOMENCE ("City"), is in Kankakee County, Illinois with its principal place of business in Momence, Illinois. The City of Momence Police Department is a department of the City of Momence ("Momence Police Department"). At all times relevant, Defendant has employed twenty (20) or more persons for each working day in each of the twenty (20) or more calendar weeks in the current or preceding calendar year.

6. Defendant, JEFFREY CAVENDER ("Cavender"), at all times relevant hereto was/is the Chief of Police at the Momence Police Department and Plaintiff's supervisor. Chief Cavender is sued for damages in his individual capacity and in his official capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

7. On or around March 23, 2016, Plaintiff filed a Charge of Discrimination against the Momence Police Department with the Equal Opportunity Commission ("EEOC"). Plaintiff's Charge of Discrimination was filed within three hundred (300) days after the alleged unlawful employment practice(s) occurred. Plaintiff received his right-to-sue on October 7, 2016 and has filed suit within the requisite 90-day thereof.

8. As is permitted by the ADEA, this action has also been timely brought more than sixty (60) days after filing of Plaintiff's EEOC charge, and Plaintiff has otherwise complied with all administrative prerequisites to filing this action.

## FACTS COMMON TO ALL COUNTS

9. Plaintiff is a forty-seven (47) year-old male. He is an employee within the meaning of the ADEA and belongs to the class of employees protected under the statute, namely, employees over the age of forty (40) years.

10. On or around June 24, 2004, Defendant, Momence Police Department, hired Plaintiff as a part-time Patrolman. Defendant, City of Momence, promoted Plaintiff to full-time Patrolman on or around July 2, 2015. Plaintiff's most recent position with Defendant was full-time Patrolman.

11. In or around November 2013, Defendant City of Momence hired Defendant Cavender as the Chief of Police. At that time, the Momence Police Department employed approximately twelve (12) patrolmen, seven (7) of which were over the age of forty (40).

12. From and after November 2013, Defendant City of Momence vis-à-vis its Chief of Police, Defendant Cavender, subjected part-time and full-time patrolmen over the age of forty (40), including plaintiff, to different terms and conditions of employment than younger patrolmen including: heightened scrutiny, excessive micromanaging, criticism(s) and reprimand(s) for

minor flaw(s) and issue(s) that were never before at issue throughout their careers, unwarranted and false allegations, denial of training, denial of work opportunities and assignments, different pre-employment processes for the full-time position, and different disciplinary action.

13. From and after November 2013, Chief Cavender denied work opportunities to Patrolmen over the age of forty (40), including Plaintiff, to provide security at high school and other events. Chief Cavender only offered the work opportunities to younger Patrolman outside of the protected class, even when owners of establishments specifically requested Chief Cavender to send Plaintiff to provide such security.

14. Between summer 2014 – summer 2015, on approximately four occasions Plaintiff asked Cavender to be allowed to be trained in the following areas: 1) driving under the influence; 2) drugs; and 3) interview and interrogation techniques. On each occasion, Chief Cavender denied and/or ignored Plaintiff's requests for additional training. Chief Cavender allowed younger patrolmen the opportunity to be trained in the subject areas.

15. Chief Cavender assigned younger officers to drive new or almost new vehicles, but Plaintiff was required to use the oldest squad car in the police department.

16. Twice Defendant Chief Cavender required Plaintiff to attend Report Writing classes, despite years of experience writing reports. Younger employees outside of the protected class of the same rank as the Plaintiff were not required to attend these classes.

17. A full-time position became available in May of 2015. Instead of considering Plaintiff, Defendant hired Officer Ben Garcia, a twenty-three (23) year old. Plaintiff had more experience in law enforcement and seniority as a part-time officer.

18. Plaintiff was promoted to full-time patrolman on July 2, 2015. Promotion was contingent on Plaintiff remaining on probation for a year despite nine (9) years of service for the

Momence Police Department. However, Chief Cavender promoted younger part-time Patrolmen to full-time without requiring them to work for a probationary period during this period.

19. Cavender also did not require younger Patrolmen to interview for the full-time Patrolman position, while he required Plaintiff to interview for the full-time Patrolmen position.

20. Cavender subjected to Plaintiff to harsher disciplinary action than the younger Patrolmen who were not in the protected class when both Plaintiff and the younger Patrolmen were involved in the same incident.

21. In the early summer of 2015, while Cavender, Lieutenant Vekemans, and Officer-In-Charge Caliendo were not at work. Chief Cavender placed Officer Stetson, an officer with less than a year of experience, in charge.

22. On September 21, 2015 Alderwoman Carrie Navratil brought to Chief Cavender's attention an Instagram post by Officer Garcia. In this photo, Garcia was in his Momence Police Department uniform and vehicle holding up his service pistol. Garcia added to the photo the aggressive caption, "I am a sheep dog that hunts wolves at night, although they prey on the weak and defenseless, sheep beware, for I am out there waiting for you."

23. In response to this news, Chief Cavender suspended Officer Garcia for ten (10) days for breaking multiple City of Momence regulations.

24. Chief Cavender also determined he had to know where the photo came from. Alderwoman Navratil stated no one gave her the photo, it was left for her in her mailbox. Alderwoman Navratil stated she did not know who put the picture in her mailbox. Despite the fact the photo was publicly accessible by anyone on the Instagram app, Chief Cavender determined that the source of the photo must be someone in the police force.

25. Plaintiff did not provide the photos to Alderwoman Navratil.

26. After conducting an internal investigation, Chief Cavender reported that employees stated Plaintiff hated Officer Garcia and wanted to give the pictures to the Navratil family and that Plaintiff slept while on the job. Both allegations were false, but Chief Cavender took the allegations as true.

27. In or around mid-September 2015, Cavender made unwarranted and false allegations regarding Plaintiff, including but not limited that Plaintiff was asleep in his patrol car. Chief Cavender put these allegations into his Internal Investigation Report, in which at least one Officer was misquoted as corroborating that Plaintiff ever slept on the job.

28. On September 28, 2015, Chief Cavender brought Plaintiff in for an interview about the internal investigation. In this Cavender asked Plaintiff about the Social Media policy, if Plaintiff had seen the photos of Officer Garcia, and whether or not Plaintiff discussed these photos with anyone or gave them to anyone including the Navratils. Plaintiff state that he had seen the photos, he had not spoken of the photos to anyone else, and he did not provide the photos to the Navratils.

29. At the end of the interview, Chief Cavender told Plaintiff that throughout the investigation he had been brought some information and "obviously [he is] not happy about some of the things [he] learned." He admitted after discussing with Plaintiff and some of the employees in the police department outside of the protected class, "somebody is not telling the truth here." As a result, Chief Cavender decided that Plaintiff must not be telling the truth, those members outside of the protected class who had replaced employees who were in the protected class, and told Plaintiff he would either submit a resignation the next morning or be terminated. No other reason was given for the termination.

30. Plaintiff did not tender his resignation the next morning.

6

31.     On or around September 29, 2015, Defendant Momence Police Department, terminated Plaintiff's employment. The termination letter sent from Chief Cavender did not state a specific reason for terminating the Plaintiff.

32.     Between November 13, 2013 – September 29, 2015, Defendant Momence Police Department, through the actions of Defendant Chief Cavender, terminated and/or caused the resignation of all seven (7) patrolmen over the age of forty (40). Each and every patrolman was replaced by a patrolman in his early-to-mid-20. Plaintiff was replaced by a patrolman in his mid-20's.

33.     On April 11, 2016, Chief Cavender wrote to the Illinois Department of Employment Security to protest unemployment benefits for Plaintiff. Chief Cavender stated that Plaintiff was terminated for providing false statements during an investigation. Chief Cavender also mentions false allegations of sleeping on the job, allegations against the Plaintiff which occurred after being terminated, and false allegations about improper care of his police vehicle. However, Chief Cavender focuses on this supposed false statement, which Chief Cavender stated on the record he did not know who was not telling the truth.

34.     This letter contained the first time Chief Cavender ever stated to Plaintiff that he was let go as a result of sleeping on the job.

35.     On December 9, 2015, The Momence Progress Reporter discussed a story about a contentious city council meeting on December 7, 2015. When discussing police officers sleeping on the job, Chief Cavender stated, "only one officer ever slept while on duty and he no longer works here!"

36.     Chief Cavender also allegedly relied upon the Supreme Court case *Giglio v. U.S.* to fire Plaintiff as an unsupportable basis for terminating for "inaccurate statements." *Giglio*

7

involves hiding deals with witnesses against criminal defendants, not employment internal investigation into the source of whistleblowing against state employees.

37. On January 10, 2017, Plaintiff, while working for the Village of Aroma Park Police Department, also in Kane County, was notified by the Kankakee County Emergency Telephone System *KANCOM* to pursue and apprehend an armed alleged shooter. This suspect allegedly had already shot two individuals.

38. KANCOM also notified other officers in the area to provide back-up to Hoekstra. Two Momence police officers responded. On information and belief, shortly thereafter, Chief Cavender contacted his two Momence officers on their cell phones, ordered them to stand down and to not back up Plaintiff, potentially endangering Plaintiff's life and the citizenry as a whole.

39. Plaintiff filed an amended EEOC charge for retaliation ragdring the January 10, 2017 incident. A 90-day right to sue letter for the amended EEOC charge was received February 17, 2017.

**Count I**
**Age Discrimination**
**in Violation of the ADEA**
**(Against City of Momence)**

40. Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph forty (40).

41. Defendant, City of Momence, subjected Plaintiff to age discrimination by giving him less advantageous employment terms and conditions than given to younger employee(s).

42. Defendant, Momence Police Department, failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future. 42 U.S.C. § 2000e.

8

43. As a direct and proximate result of Defendant City of Momence's discrimination against Plaintiff, he has suffered and will continue to suffer damage including loss of wages and benefits, liquidated damages, front pay, pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

44. The willful nature of the violations, committed with malice or reckless indifference to the federally protected rights of Plaintiff, warrant statutory punitive damages pursuant to 42 U.S.C. § 1981a(b)(1).

45. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, CITY OF MOMENCE, and asks that this Honorable Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as this Honorable Court may find appropriate.

### Count II
### Constitutional and Civil Rights Pursuant to 42 U.S.C. 1983, 1988 Violation
### Of the Fourteenth Amendment-Equal Protection Prohibiting Age Discrimination
### (Against City of Momence)

46. Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph forty-six (46).

47. Defendant Momence Police Department's violated Plaintiff's Fourteenth Amendment equal protection rights by allowing him to be subjected to age discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the

> United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

48. Defendant City of Momence engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting age discrimination, and/or that decisions were made by Defendant City of Momence's agents with final policymaking authority contrary to express requirements prohibiting discrimination.

49. Defendant Momence Police Department, acting under color of state law, deprived Plaintiff of his constitutional rights and/or acted intentionally and/or with callous disregard for Plaintiff's clearly established constitutional rights.

50. As a direct and proximate result of Defendant City of Momence's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

51. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, CITY OF MOMENCE, and asks that this Honorable Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay,

punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as this Honorable Court may find appropriate.

## Count III
### Constitutional and Civil Rights Pursuant to 42 U.S.C. 1983, 1988 Violation Of the Fourteenth Amendment-Equal Protection Prohibiting Age Discrimination
### (Against City of Momence and Against Jeffrey Cavender in his Official Capacity)

52. Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph fifty-two (52).

53. Cavender violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to age discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

54. Cavender had final policymaking authority. Cavender acted under color of state law, engaged in a policy, custom and/or practice of condoning age discrimination based upon Plaintiff's age, which deprived Plaintiff of his constitutional rights. Cavender caused and/or personally participated in the statutory and/or constitutional violation decisions against the interest of Plaintiff.

55. As a direct and proximate result of Cavender's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and

emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

56.     Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, CITY OF MOMENCE, and against JEFFREY CAVENDER in his Official Capacity, and asks that this Honorable Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as this Honorable Court may find appropriate.

### Count IV
### Constitutional and Civil Rights Pursuant to 42 U.S.C. 1983, 1988 Violation Of the Fourteenth Amendment-Equal Protection Prohibiting Age Discrimination
### (Against Cavender in his Individual Capacity)

57.     Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph fifty-seven (57).

58.     Cavender violated Plaintiff's Fourteenth Amendment equal protection rights by subjecting him to age discrimination, to wit:

> Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, equity, or other proper proceeding for redress."

59.     Cavender intentionally discriminated, caused and/or participated in discriminating against Plaintiff based on his age.

60. As a direct and proximate result of Cavender's discrimination against Plaintiff, he has suffered and will continue to suffer severe and substantial damages damage including loss of wages and benefits, lost raises, diminished earnings capacity, lost career and business opportunities, liquidated damages, back pay, front pay, punitive damages, extreme and severe mental anguish and emotional distress, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish, distress, pain and suffering, and other compensatory damages. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

61. Plaintiff also seeks prejudgment interest, post-judgment interest, and costs including reasonable statutory attorneys' fees and expert witness fees.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, JEFFREY CAVENDER in his Individual Capacity, and asks that this Honorable Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages pursuant to 42 U.S.C. § 1981a(b)(1), reasonable statutory attorneys' fees, expert witness fees, and costs, and such other relief as this Honorable Court may find appropriate.

### Count V
### Retaliatory Termination
### (Against City of Momence)

62. Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph sixty-two (62).

63. An employer generally retains the right to fire its employees "at-will," we held that an employer may not discharge an employee if a clear mandate of public policy is involved.

*Palmateer v. International Harvester Co.*, 421 N.E.2d 876, 879 (Ill. 1981); See also, *Michael v. Precision Alliance Group, LLC.*, 21 N.E.3d 1183, 188 (Ill. 2014).

64.     There are three elements a plaintiff is required to prove to sustain a tort for retaliatory discharge: first, an employee must establish that she has been discharged; second, she must demonstrate that her discharge was in retaliation for her activities; and, finally, she must show that the discharge violates a clear mandate of public policy. *Belline v. K-Mart Corp.*, 940 F.2d 184, 186 (7th Cir. 1991).

65.     While there is no precise definition of what constitutes clearly mandated public policy, a review of Illinois case law reveals that retaliatory discharge actions have been allowed where an employee is discharged for reporting improper conduct, also known as "whistleblowing". "The rationale is that, in these situations, an employer could effectively frustrate a significant public policy by using its power of dismissal in a coercive manner. Therefore, recognition of a cause of action for retaliatory discharge is considered necessary to vindicate the public policy underlying the employee's activity, and to deter employer conduct inconsistent with that policy." *Michael v. Precision All. Group, LLC*, 21 N.E.3d at 1188.

66.     Plaintiff was discharged on September 29, 2015, when Defendant Cavender sent a termination letter to the Plaintiff.

67.     Plaintiff was discharged in retaliation for the pictures given to Alderwoman Navratil. While Plaintiff did not give the pictures of Officer Garcia's Instagram post to Alderwoman Navratil, Cavender believed Plaintiff did.  Cavender was more concerned with who provided printed out pictures from a publicly accessible Instagram page than the person, outside of the protected class. who posted the picture. Plaintiff was then terminated for not admitting to providing the photos, which Plaintiff did not do.

68. Plaintiff was retaliated against for what Defendant Cavender thought he did, not what Defendant actually did.

69. Furthermore, accounts placed into the Internal Investigation Report, which occurred as a result of the photos being provided to Alderwoman Navratil, are inaccurate representations of at least two officers.

70. Public policy is not furthered by conducting Internal Investigations to find the "leak" of public information. Furthermore, terminating an employee because they will not admit they did something without any proof they did it is not in the interest of public policy.

71. Even assuming that the Plaintiff did provide the images to Alderwoman Navratil, which he did not, public policy would dictate that Plaintiff cannot be in trouble for this. This was not a criminal prosecution. Officer Garcia was acting in a way unbecoming of an officer of the law and damaging the public's perception of their law enforcement. Reporting this post caused the post to be removed from the internet, helping to repair the damage done by posting the image in the first place.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, CITY OF MOMENCE, and asks that this Honorable Court award him direct and consequential damages, lost wages and benefits, liquidated damages, front pay, back pay, punitive damages, reasonable statutory attorneys' fees, expert witness fees, and costs and exemplary damages in the amount of $1,000,000 in order to punish JEFFREY CAVENDER individually and to deter JEFFREY CAVENDER from similar conduct, and such other relief as this Honorable Court may find appropriate., and such other relief as this Honorable Court may find appropriate.

### Count VI
### Defamation *Per Se*
### (Against City of Momence and Jeffrey Cavender)

72.     Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph seventy-two (72).

73.     Defendant made several false and defamatory written and oral statements regarding the Plaintiff, as illustrated in paragraphs 31 through 33 to a third party.

74.     The foregoing false and defamatory written and oral statements are defamatory *per se* in that they imputed that Plaintiff is unable to perform or lacks integrity in performing his employment duties, and/or attributes to Plaintiff a lack of ability, and/or otherwise harms Plaintiff as being injurious to his in his profession.

75.     The foregoing false and defamatory written and oral statements were not protected by a qualified privilege. Alternatively, if the statements were protected by a qualified privilege, Defendant exceeded and/or abused the qualified privilege because Defendant made the false statements with an intent to injure Plaintiff and/or with reckless disregard for the truth.

76.     Plaintiff reasonably could not have known the comments imputed him as he did not tell Plaintiff that the false allegation of sleeping on the job was one of the reasons he was let go. It was not until April 11, 2016 that plaintiff did and should have known that Cavender told everyone that he was sleeping on the job, which was false.

77.     This allegation was placed into Plaintiff's personnel file. Plaintiff asked for this personnel file, but Cavender denied all requests. However, any future employer that asked to see this personnel hire saw the allegations Plaintiff slept on the job taken as truthful assertions, representing defamation per se.

78. As the foregoing false and defamatory written and oral statements constitute defamation *per se* no damages need be alleged or proved as damages are presumed.

79. As a direct and proximate result of the foregoing false and defamatory written and oral statements, Plaintiff has suffered and will suffer emotional distress, and has been, and will continue to be, embarrassed and humiliated by the false statements. Additionally, as a direct and proximate result of the foregoing false and defamatory written and oral statements, Plaintiff has suffered, and will continue to suffer, significant damage to his personal and/or professional reputation.

80. As the aforesaid false and defamatory written and oral statements constitute defamation per se no damages need be alleged or proved as damages are presumed.

WHEREFORE, Plaintiff, RUSSEL HOEKSTRA, demands judgment against CITY OF MOMENCE and JEFFREY CAVENDER, for compensatory damages in an amount in excess of the minimum amount required for jurisdiction in Cook County, consequential damages including but not limited to attorneys' fees and expenses related to the investigations, and exemplary damages in the amount of $1,000,000 in order to punish JEFFREY CAVENDER individually and to deter JEFFREY CAVENDER from similar conduct, and such other relief as this Honorable Court may find appropriate.

### Count VII
**Retaliation**
**(Against City of Momence and Cavender in his Official and Individual Capacities)**

81. Paragraphs one through thirty-nine (1-39) are incorporated herein by reference as paragraph sixty-two (62).

82. In *Robinson v. Shell Oil Co.*, *519 U.S. 337 (1997),* the Supreme Court held that an employer may be liable for Title VII retaliation for action taken *after* the employee's discharge.

17

83. Title VII's operative provision makes it unlawful "for an employer to discriminate against any of his *employees* or applicants for employment" because they raised a complaint, internally or externally, under Title VII.

84. Plaintiff was discharged on September 29, 2015, when Defendant Cavender sent a termination letter to the Plaintiff.

85. As set forth in ¶¶ 37-39, on January 10, 2017, Cavender called off two Momence police officer responders who were attempted to assist and back-up Plaintiff in Plaintiff's police pursuit of an alleged active shooter, putting Plaintiff and the public at large at serious risk of injury.

86. Plaintiff filed an amended EEOC charge arising from the January 10, 2017 incident for further retaliation for Plaintiff's Title VII and ADA.

87. Plaintiff suffered severe emotional distress resulting from such actions.

WHEREFORE, Plaintiff, RUSSELL HOEKSTRA, prays for judgment in his favor and against Defendant, CITY OF MOMENCE, and asks that this Honorable Court award him direct and consequential damages, punitive damages, reasonable statutory attorneys' fees, expert witness fees, and costs and exemplary damages in the amount of $1,000,000 in order to punish JEFFREY CAVENDER individually and to deter JEFFREY CAVENDER from similar conduct, and such other relief as this Honorable Court may find appropriate.

> Respectfully submitted,
> RUSSELL HOEKSTRA,
> Plaintiff,
> By: /s/ Nicholas F. Esposito

Nicholas F. Esposito, Atty. # 0755176
ESPOSITO & STAUBUS LLP
7055 Veterans Blvd., Unit B
Burr Ridge, IL 60527
(312) 346-2766